T.C. Memo. 2009-118

UNITED STATES TAX COURT

KHAIRY E. AREF, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11164-06.                    Filed May 27, 2009.

Khairy E. Aref, pro se.

<u>John D. Faucher</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined a $41,920 deficiency

in and a $8,384 section 6662(a)[1] penalty on petitioner's 2002

---

[1]  All section references are to the Internal Revenue Code
in effect for the year in issue, and all Rule references are to
the Tax Court Rules of Practice and Procedure.

Federal income taxes. After a concession,[2] the issues for decision are: (1) Whether petitioner substantiated deductions claimed on his Schedule C, Profit or Loss From Business; (2) whether petitioner had unreported income; (3) whether petitioner is entitled to claim head-of-household filing status; and (4) whether petitioner is liable for the section 6662(a) penalty.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time he filed the petition, petitioner resided in Egypt.

During 2002 petitioner worked for the California Department of Corrections. He was the agency coordinator. Petitioner developed and coordinated new programs for the State of California Department of Corrections--which had 155,000 employees, 165,000 inmates, and a $6.7 billion budget. His supervisor was a cabinet secretary, and his second level supervisor was the Governor of California.

Petitioner is a licensed hazardous material specialist and a certified instructor in hazardous materials. He also is a registered professional engineer and an environmental specialist.

---

[2] Respondent concedes that petitioner paid $30,000 in deductible alimony during 2002.

Additionally, during 2002 petitioner operated an international consulting and training business that provided training and technical services on handling hazardous materials and toxic substances (Mr. Aref's business). The training and technical services were provided to private entity firefighters, military personnel, and peace officers and for the operation of correctional facilities, custody of inmates and prisoners, handling and management of toxic substances, and emergency response for spills and medical waste, as the case may be.

Mr. Aref's business had over 400 videotapes available for training purposes, covering topics such as correctional facilities construction and administration, peace officers' training, environmental impact statements and reports, corrections officers training, fire protection and safety, and health and safety plans. Petitioner oversaw the production (including writing the narratives) and reproduction of the videotapes. Petitioner met with clients in the United States, including the Prime Minister and the Deputy Prime Minister of Egypt.

Mr. Aref's business operated in and had offices and business equipment in Egypt. Mr. Aref's business had equipment in Egypt that included two leased cars, Toyota Land Cruisers. The cars were used to get to training sessions and for pickups and

deliveries related to Mr. Aref's business.  Mr. Aref's business also had an accountant in Egypt.

Petitioner leased office space in Egypt.  The offices were located at 17 Atbara Street and also at 64 Talmaneal Street in Mohandeseen, Giza, Egypt.  At 17 Atbara Street a sign outside the building had the name of Mr. Aref's business on it.

During the year in issue Mr. Aref's business was marketed and operated in Egypt by Ahmed Fadel.  Petitioner had a written contract with Mr. Fadel.  The contract provided that petitioner would establish training and technical services and that Mr. Fadel would market them in Egypt.  Mr. Fadel was responsible for providing logistical support to petitioner necessary to provide the training.

For 2002 petitioner deducted the following amounts as business expenses:  Depreciation $1,119; interest $8,699; rent or lease of vehicles, machinery, and equipment $9,808; rent or lease of other business property $9,755; wages $23,000; and other expenses $6,309 (accounting $3,600 and telephone $2,709) for a total of $58,690.

Mr. Fadel sent petitioner monthly invoices for the expenses of Mr. Aref's business.  These invoices were delivered to petitioner.  Petitioner paid the invoices and had the payment delivered directly to Mr. Fadel.  The amounts on the invoices tie into the amounts claimed on petitioner's Schedule C.

During 2002 petitioner received two separate loans[3] of $60,000 (a total of $120,000). One loan was from Jose Fawzia, and the second loan was from the Gawish Medical Center.[4]

OPINION

I. Substantiation of Schedule C Deductions

Generally, deductions are a matter of legislative grace; taxpayers have the burden of showing that they are entitled to any deduction claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers are required to maintain records that are sufficient to enable the Commissioner to determine their correct tax liability. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs.

Taxpayers are allowed a deduction for ordinary and necessary expenses paid or incurred in carrying on a trade or business. Sec. 162(a). Whether an expenditure is ordinary and necessary is generally a question of fact. Commissioner v. Heininger, 320 U.S. 467, 475 (1943). Generally, for an expenditure to be an ordinary and necessary business expense, the taxpayer must show a bona fide business purpose for the expenditure; there must be a proximate relationship between the expenditure and the business

---

[3] The characterization of the amounts as loans is not in dispute.

[4] The testimony was somewhat unclear on whether this loan was from the Gawish Medical Center or from Dr. Hassan Gawish. Either way, it was a separate loan for $60,000.

of the taxpayer.  <u>Challenge Manufacturing Co. v. Commissioner</u>, 37 T.C. 650 (1962); <u>Henry v. Commissioner</u>, 36 T.C. 879 (1961).

To be "necessary" within the meaning of section 162, an expense needs to be "appropriate and helpful" to the taxpayer's business.  <u>Welch v. Helvering</u>, 290 U.S. 111, 113 (1933).  The requirement that an expense be "ordinary" connotes that "the transaction which gives rise to it must be of common or frequent occurrence in the type of business involved."  <u>Deputy v. du Pont</u>, 308 U.S. 488, 495 (1940) (citing <u>Welch v. Helvering</u>, <u>supra</u> at 114).

When taxpayers establish that they have incurred deductible expenses but are unable to substantiate the exact amounts, we can estimate the deductible amount in some circumstances, but only if the taxpayers present sufficient evidence to establish a rational basis for making the estimate.  See <u>Cohan v. Commissioner</u>, 39 F.2d 540, 543-544 (2d Cir. 1930); <u>Vanicek v. Commissioner</u>, 85 T.C. 731, 742-743 (1985).  In estimating the amount allowable, we bear heavily upon taxpayers whose inexactitude is of their own making.  See <u>Cohan v. Commissioner</u>, <u>supra</u> at 544.  There must be sufficient evidence in the record, however, to permit us to conclude that a deductible expense was paid or incurred. <u>Williams v. United States</u>, 245 F.2d 559, 560 (5th Cir. 1957).

In addition to satisfying the criteria for deductibility under section 162, certain categories of expenses must also

satisfy the strict substantiation requirements of section 274(d) in order for a deduction to be allowed.  The expenses to which section 274(d) applies include, among other things, those for listed property, e.g., automobile expenses.  Secs. 274(d)(4), 280F(d)(4)(A)(i) and (ii).  We may not use the Cohan doctrine to estimate expenses covered by section 274(d).  See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).  To substantiate a deduction attributable to listed property, a taxpayer must maintain adequate records or present corroborative evidence to show the following:  (1) The amount of the expense; (2) the time and place of use of the listed property; and (3) the business purpose of the use.  Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Our resolution of the substantiation issue turns on the applicable law and our determination of the credibility of the evidence presented.

A.  Depreciation

There is allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including obsolescence) of property used in a trade or business.  Sec. 167(a).  The basis on which exhaustion, wear and tear, and

obsolescence are to be allowed in respect of any property is the adjusted basis as provided in section 1011.  Sec. 167(c).

The record does not establish what office furniture and/or equipment was depreciated, what amount was paid for it, when it was put in service, or who owned it.  Accordingly, petitioner has not substantiated the deduction for depreciation.

B.  Interest

Petitioner testified that he gave his records regarding interest to his accountant, the accountant arrived at the figure on the return, and he trusted his accountant.  There is insufficient credible evidence to establish a rational basis for making an estimate of the deductible amount of interest petitioner paid during 2002.  See Cohan v. Commissioner, supra at 543-544; Vanicek v. Commissioner, supra at 742-743.  Accordingly, we shall not allow petitioner a deduction for interest.

C.  Rent or Lease of Vehicles, Machinery, and Equipment

Petitioner testified that he paid $818 per month to Mr. Fadel to lease the two cars.  This amount is corroborated by invoices petitioner submitted.

Automobile expenses must also satisfy the strict substantiation requirements of section 274(d) in order for a deduction to be allowed because an automobile is listed property.  Secs. 274(d)(4), 280F(d)(4)(A)(i) and (ii).

Petitioner did not keep a diary, log, trip sheet, or similar record regarding the use of the cars, nor did he establish the time and place of use of the cars (other than that the vehicles were used in Egypt). See secs. 274(d)(4), 280F(d)(4)(A)(i) and (ii); sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). Petitioner has failed to substantiate the claimed automobile expenses in accordance with sections 162 and 274 and the regulations thereunder. Accordingly, we sustain respondent's determination on this issue.

D.    Rent or Lease of Other Business Property

This expense was for the lease of office space in Egypt. Office expenses may be "'ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business'". Schnell v. Commissioner, T.C. Memo. 2006-147 (quoting section 162(a)).

We find the invoices, corroborated by petitioner's testimony and the written contract with Mr. Fadel, to be credible evidence of the amount that petitioner paid in 2002 for rent or lease of office space used in Mr. Aref's business. All of the invoices bear a "paid" stamp from Mr. Fadel acknowledging that petitioner paid the invoice. Accordingly, we conclude that petitioner has substantiated this expense.

E.  Wages

This expense was for salary and wages for the people in Egypt who provided or administered training and technical services, for office staff, and for the drivers of the two cars. Wages may be ordinary and necessary business expenses which generally are deductible under section 162(a).  Brown v. Commissioner, T.C. Memo. 1992-40.

We find the invoices, corroborated by petitioner's testimony, to be credible evidence of the amount of the wage expense of Mr. Aref's business that petitioner paid in 2002.  All of the invoices bear a paid stamp from Mr. Fadel acknowledging that petitioner paid the invoice.  Accordingly, we conclude that petitioner has substantiated this expense.

F.  Accountant

The accountant did the accounting, invoicing, and list of purchases and sales for Mr. Aref's business.  Accounting fees may be ordinary and necessary business expenses which generally are deductible under section 162(a).  Smith v. Commissioner, T.C. Memo. 1994-640.

We find the invoices, corroborated by petitioner's testimony and the written contract with Mr. Fadel, to be credible evidence of the amount of the accountant expense of Mr. Aref's business that petitioner paid in 2002.  All of the invoices bear a "paid" stamp from Mr. Fadel acknowledging that petitioner paid the

invoice.   Accordingly, we conclude that petitioner has substantiated this expense.

G.  Telephone

Telephone expenses may be deductible under section 162(a) if the expenses incurred are ordinary and necessary in carrying on a trade or business.  Weeldreyer v. Commissioner, T.C. Memo. 2003-324 (citing Vanicek v. Commissioner, 85 T.C. at 742, Sengpiehl v. Commissioner, T.C. Memo. 1998-23, and Green v. Commissioner, T.C. Memo. 1989-599).

Petitioner testified that he did not know the cost of a basic telephone line in Egypt.  According to the invoices, petitioner paid $315 per month for telephone service.

When a taxpayer establishes that he has incurred deductible expenses but is unable to substantiate the exact amounts, we can estimate the deductible amount, but only if the taxpayer presents sufficient evidence to establish a rational basis for making the estimate.  See Cohan v. Commissioner, 39 F.2d at 543-544; Vanicek v. Commissioner, 85 T.C. at 742-743.  In estimating the amounts allowable, we bear heavily upon the taxpayer whose inexactitude is of his own making.  See Cohan v. Commissioner, supra at 544. Upon the basis of the evidence presented, pursuant to Cohan, we estimate that petitioner paid $150 per month for telephone expenses and allow him a deduction of $1,800 for 2002.

II.  Unreported Income

Respondent determined that petitioner had $84,581 in unreported gross income.  At trial respondent conceded $6,000 of this amount.[5]

Every individual liable for tax is required to maintain books and records sufficient to establish the amount of his or her gross income.  Sec. 6001; DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992).  Where a taxpayer fails to maintain or produce adequate books and records, the Commissioner is authorized to compute the taxpayer's taxable income by any method that clearly reflects income.  Sec. 446(b); Holland v. United States, 348 U.S. 121 (1954); Webb v. Commissioner, 394 F.2d 366, 371-372 (5th Cir. 1968), affg. T.C. Memo. 1966-81.  The reconstruction of income need only be reasonable in the light of all surrounding facts and circumstances.  Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970).  The Commissioner is given latitude in determining which method of

---

[5]  At the May 15, 2007, recall of this case before Judge Cohen, respondent conceded the unreported income issue on the record.  (At that time respondent had also conceded the issue in his pretrial memorandum.)  Apparently, respondent revoked or withdrew this concession before the trial in the case (although when asked in the case at bar whether the unreported income issue was still at issue, respondent's counsel initially answered "No").  Petitioner did not object to the trial of the unreported income issue or assert that the unreported income was no longer at issue.

reconstruction to apply when a taxpayer fails to maintain records.  Petzoldt v. Commissioner, 92 T.C. 661, 693 (1989).

Respondent used the source and application of funds method (also known as the cash expenditures in excess of reported income method) to reconstruct petitioner's income.  Respondent failed to include in his calculation the $120,000 in loans petitioner received during 2002.[6]  When these loans are included in the source and application of funds calculation, petitioner does not have any unreported income for 2002 (the $120,000 of loans that were not included as income exceeds the $78,581 ($84,581 minus the $6,000 respondent conceded) determined to be unreported income).  Accordingly, we find for petitioner on this issue.

III.  Head of Household

An individual qualifies as a head of household if the individual is not married at the close of the taxable year and maintains as his home a household that constitutes for more than one-half of the taxable year the principal place of abode of an individual who qualifies as the taxpayer's dependent within the meaning of section 151.  Sec. 2(b)(1)(A).

Respondent did not raise the issue of head-of-household filing status in the notice of deficiency.  Respondent raised it

---

[6]  See supra note 3.  Respondent disputed that petitioner received the loans.  We found as a fact that petitioner received the $120,000 in loans.

as a new matter at trial. Accordingly, respondent bears the burden of proof on this issue. See Rule 142(a).

Petitioner was not married at the close of the taxable year. Respondent has not established that petitioner did not maintain as his home a household that constituted for more than one-half of the taxable year the principal place of abode of an individual who qualified as petitioner's dependent within the meaning of section 151. Petitioner claimed two dependents on his 2002 tax return. Furthermore respondent's reconstruction of petitioner's income using the source and application of funds method was based on petitioner's having a family of three. Respondent has not established the total cost of maintaining the household in 2002 or that petitioner did not provide over half of the cost. Accordingly, respondent has failed to prove that petitioner is not entitled to head-of-household status.

IV. Section 6662(a)

Section 7491(c) provides that the Commissioner will bear the burden of production with respect to the liability of any individual for additions to tax and penalties. "The Commissioner's burden of production under section 7491(c) is to produce evidence that it is appropriate to impose the relevant penalty, addition to tax, or additional amount". Swain v. Commissioner, 118 T.C. 358, 363 (2002); see also Higbee v. Commissioner, 116 T.C. 438, 446 (2001). However, the

Commissioner does not have the obligation to introduce evidence regarding reasonable cause or substantial authority.  <u>Higbee v. Commissioner</u>, <u>supra</u> at 446-447.

Respondent determined that petitioner is liable for the section 6662(a) penalty for 2002.  Pursuant to section 6662(a) and (b)(1) and (2), a taxpayer may be liable for a penalty of 20 percent on the portion of an underpayment of tax due to negligence or disregard of rules or regulations or a substantial understatement of income tax.  "Negligence" includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly.  Sec. 1.6662-3(b)(1), Income Tax Regs.  An "understatement" is the difference between the amount of tax required to be shown on the return and the amount of tax actually shown on the return.  Sec. 6662(d)(2)(A).  A "substantial understatement" exists if the understatement exceeds the greater of (1) 10 percent of the tax required to be shown on the return for a taxable year, or (2) $5,000.  See sec. 6662(d)(1)(A).  Respondent met his burden of production as there was a substantial understatement.

The accuracy-related penalty is not imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith.  Sec. 6664(c)(1).  The decision as to whether the taxpayer acted with reasonable cause

and in good faith depends upon all the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner maintained business records to substantiate his expenses.  In total the invoices hardly deviated from the expenses claimed by more than a few dollars (with the exception of the telephone costs which were off by approximately $100).  We conclude that petitioner acted with reasonable cause and in good faith with respect to the substantiation of his business expenses.

To reflect the foregoing,

Decision will be entered under Rule 155.