T.C. Memo. 2013-132

UNITED STATES TAX COURT

PAUL FREDRICK JONES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20591-10.                    Filed May 29, 2013.

Paul Fredrick Jones, pro se.

<u>Randall B. Childs</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, <u>Judge</u>:  The respondent (the IRS) issued a notice of deficiency

to the petitioner, Mr. Paul Fredrick Jones, for the 2007 tax year.  In the notice the

IRS determined a deficiency of $13,590, a section 6651(a)(1) addition to tax of

$3,057.75, a section 6651(a)(2) addition to tax of $1,630.80, and a section 6654(a)

[*2] addition to tax of $618.52.[1]  Jones timely filed a petition under section

6213(a) requesting that we redetermine the deficiency and the additions to tax.

We have jurisdiction under section 6214.

After concessions,[2] the issues for decision are:

(1)     whether Jones is entitled to deduct $45,011.72 for business expenses

         reported on Schedule C, Profit or Loss From Business;

(2)     whether Jones is liable for the section 6651(a)(1) addition to tax;

(3)     whether Jones is liable for the section 6651(a)(2) addition to tax; and

(4)     whether Jones is liable for the section 6654(a) addition to tax.

## Background

Preliminary matters

Before trial the Court ordered that paragraphs 1 through 12 of the IRS's

proposed stipulation of facts be deemed admitted under Rule 90.  The Court

---

[1]All section references are to the Internal Revenue Code in effect for the year at issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

[2]In his pretrial memorandum, Jones conceded that the notice of deficiency was correct in its determination that he received $50,894 in nonemployee compensation from Pre-Paid Legal Services.  In its opening brief, the IRS conceded that the notice of deficiency was incorrect in determining that Jones earned $750 in nonemployee compensation from Life Care Retirement Communities and $241 in dividend income.

**[*3]** reserved ruling on whether paragraphs 13 and 14 should be deemed admitted. The IRS has now conceded that paragraphs 13 and 14 are incorrect. Therefore, the Court will order that these paragraphs shall not be deemed admitted.

Jones resided in Florida when he filed the petition.

Jones's business

Jones worked as an independent sales associate for Pre-Paid Legal Services, a publicly traded company that provided legal insurance to businesses and individuals. Jones sold memberships to the customers of Pre-Paid Legal Services and was entitled to commissions for these sales. He also recruited new sales associates for Pre-Paid Legal Services and, pursuant to its multilevel marketing arrangement, was entitled to a percentage of the revenue they generated. Jones received nonemployee compensation of $50,894 from Pre-Paid Legal Services.

Besides Pre-Paid Legal Services, Jones participated in other multilevel marketing arrangements. He did not earn any money, but his participation allowed him to meet people to recruit as sales associates for Pre-Paid Legal Services.

Jones worked from his house in the area of Orlando, Florida.

Jones did not file a federal income tax return for 2006 or 2007. For 2007 the IRS prepared a substitute for return on Jones's behalf, as authorized by section

**[*4]** 6020(b).  Jones did not make any payments of federal income tax or estimated tax for 2007.

Discussion

1.     Deficiency

In deficiency proceedings before the Tax Court, the burden of proof generally rests with the taxpayer.  Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Section 7491 imposes the burden of proof on the IRS with respect to a given factual issue where a taxpayer (1) introduces credible evidence with respect to that issue, (2) meets all applicable substantiation requirements, (3) complies with all recordkeeping requirements, and (4) cooperates with any reasonable requests for information.  Sec. 7491(a); Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001).  The record reflects that Jones did not meet recordkeeping and substantiation requirements.  Thus, the burden of proof remains on Jones.

Section 162(a) provides that "[t]here shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including * * * (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the

**[*5]** pursuit of a trade or business". No deduction is allowed for personal, living, or family expenses. Sec. 262(a). The cost of a taxpayer's own meals, unless the taxpayer is on overnight business travel, is a nondeductible personal expense. United States v. Correll, 389 U.S. 299, 299-307 (1967); Strohmaier v. Commissioner, 113 T.C. 106, 114-116 (1999). Taxpayers are required to maintain records sufficient to establish the amounts of allowable deductions and to enable the IRS to determine the correct tax liability. Sec. 6001; Shea v. Commissioner, 112 T.C. 183, 186 (1999).

It is a general rule, established in Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), that if the trial record provides sufficient evidence that the taxpayer has incurred a deductible expense, but the taxpayer is unable to fully substantiate the precise amount of the deduction, the Court should estimate the amount of the deductible expense and allow a deduction to that extent. In making such estimates, the Court may bear heavily against the taxpayer, who caused the inexactitude. Id. at 544. For the Court to estimate the amount of an expense, there must be some basis on which an estimate may be made. Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957); Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

**[\*6]** In an exception to the <u>Cohan</u> rule, section 274(d) provides that a taxpayer must satisfy strict substantiation requirements for certain kinds of expenses, such as for travel away from home, for entertainment, for gifts, and for "listed property" (as that term is defined in section 280F(d)(4)). To deduct these expenses the taxpayer "[must] substantiate[] by adequate records or by sufficient evidence corroborating the taxpayer's own statement" the amounts, times, places, and purposes related to the expenses. Sec. 274(d); 26 C.F.R. sec. 1.274-5T(b), (c)(1) and (2) (2010); <u>Dowell v. United States</u>, 522 F.2d 708, 715 (5th Cir. 1975) (holding each separate expense must be substantiated).

The expenses of traveling away from home are subject to strict substantiation requirements. Sec. 274(d)(1); 26 C.F.R. sec. 1.274-5T(a)(1), (b)(2) (2010). To deduct travel expenses the taxpayer must substantiate the amount of each expense, the dates of departure and return for each trip, the destination of travel, and the business reason for the trip. Sec. 274(d); 26 C.F.R. sec. 1.274-5T(b)(2) (2010).

Entertainment expenses are subject to strict substantiation requirements. Sec. 274(d)(2). Entertainment expenses include the costs of business meals. <u>See</u> <u>Sanford v. Commissioner</u>, 50 T.C. 823, 827 (1968), <u>aff'd</u>, 412 F.2d 201 (2d Cir. 1969). To deduct entertainment expenses the taxpayer must substantiate the

[*7] amount of each expense, the date of the entertainment, the place where the entertainment occurred, the business reason for the entertainment, the nature of any business discussion or activity, and enough information about the person entertained to establish the business relationship of that person to the taxpayer. Sec. 274(d); 26 C.F.R. sec. 1.274-5T(b)(3) (2010).

Gift expenses are subject to strict substantiation requirements. Sec. 274(d)(3). To deduct gift expenses, the taxpayer must substantiate the cost of the gift, the date of the gift, a description of the gift, the business reason for the gift, and enough information about the recipient of the gift to establish the business relationship of that person and the taxpayer. Sec. 274(d); 26 C.F.R. sec. 1.274-5T(b)(5) (2010).

Passenger automobile expenses require strict substantiation. Secs. 274(d)(4), 280F(d)(4)(A)(i).[3] A taxpayer is permitted to use the standard mileage rate in lieu of substantiating the actual cost of using a passenger automobile. See 26 C.F.R. sec. 1.274-5(j)(2) (2010). A taxpayer who opts to use the standard

---

[3]As explained in UAL Corp. v. Commissioner, 117 T.C. 7, 16 n.13 (2001) (Ruwe, J., concurring), sec. 274(d) did not require strict substantiation of the expenses of listed property such as passenger automobiles for tax year 1985 and prior years; thus, passenger automobile expenses related to travel within the locality in which the taxpayer lived and worked were not subject to the strict substantiation requirements.

**[\*8]** mileage rate is not relieved of the obligation to substantiate the amount of business mileage and the time and place of each business use of the passenger vehicle. Id. Thus, these items of information (the amount of business mileage and the time and place of each business use of the passenger vehicle) must be substantiated through adequate records or sufficient evidence corroborating the taxpayer's own statement. See 26 C.F.R. sec. 1.274-5T(b)(2), (c) (2010).

Cellular telephone expenses are subject to strict substantiation requirements. Secs. 274(d)(4), 280F(d)(4)(A)(v).[4] To deduct cell phone expenses a taxpayer must substantiate the amount of business use and the total use for the cell phone. See Trupp v. Commissioner, T.C. Memo. 2012-108, slip op. at 14; 26 C.F.R. sec. 274-5T(b)(6)(i)(B) (2010).

The expenses of internet service are not subject to strict substantiation requirements. See Bogue v. Commissioner, T.C. Memo. 2011-164, slip op. at 41 (strict substantiation does not apply to utility expenses, such as home internet service).

---

[4]Sec. 280F(d)(4)(A) was amended by the Small Business Jobs Act of 2010, Pub. L. No. 111-240, sec. 2043(a), 124 Stat. at 2560, which removed cellular phones (and similar telecommunications equipment) from the definition of listed property. The amendment is effective beginning with the 2010 year. Id. sec. 2043(b). The amendment therefore does not apply for 2007, the year at issue.

[*9] Section 280A(a) provides that for individual taxpayers "no deduction otherwise allowable under this chapter [which includes section 162] shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence." Section 280A(c)(1) contains an exception to section 280A(a). It provides: "Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis * * * (A) as the principal place of business for any trade or business of the taxpayer". Some portion of the dwelling unit must be used exclusively for business; otherwise, no deductions for expenses related to the dwelling unit are excepted by section 280A(c)(1). See Sam Goldberger, Inc. v. Commissioner, 88 T.C. 1532, 1557 (1987).

The expense of telephone service (other than cellular telephone service) is not subject to strict substantiation requirements. See, e.g., Lang v. Commissioner, T.C. Memo. 2010-152, slip op. at 14-15; Aref v. Commissioner, T.C. Memo. 2009-118, slip op. at 11. Section 262(b) provides that the expense of the first telephone line in a taxpayer's residence is treated as a personal expense.

Jones had only one bank account, which was at Bank of America. He had two credit cards: an American Express card and a Chase card. Neither the bank account nor the two credit cards were used exclusively for business expenses.

**[\*10]**  At trial Jones moved for the admission of a spreadsheet that the Court

marked as Exhibit 13-P and received into evidence for the limited purpose of

illustrating Jones's litigating position.  The spreadsheet lists 58 categories of

expenses that Jones claims are the business expenses of his work for Pre-Paid

Legal Services.  Each category has an associated amount.  The total of the amounts

for all 58 categories is $45,011.72.[5]  By contrast, the notice of deficiency

determined (and the IRS contends) that Jones is entitled to zero in business-

expense deductions.  At trial Jones's monthly statements from the two credit cards

were received into evidence.  Jones moved that some statements for his bank

account be received into evidence, but these statements were excluded from

evidence.  Jones moved for the admission of an auto mileage log, but it was

excluded from evidence.  With the possible exception of the auto mileage log,

Jones did not maintain any contemporaneous records that showed which of his

expenses were business expenses.  The only witness at trial was Jones himself.  He

testified that he incurred the expenses in the amounts listed in 58 categories in

Exhibit 13-P.  He also testified in some detail about the nature of these expenses.

---

[5]Jones moved for the admission of Exhibit 12-P, a spreadsheet that has
month-by-month amounts for each of the 58 categories.  Exhibit 12-P was also
received for the purpose of illustrating Jones's litigating position.

**[*11]**  The table below sets forth the 58 categories and corresponding amounts

Jones listed in the spreadsheet identified as Exhibit 13-P.  The first column,

"Expense category", has the headings Jones listed for each category.  The second

column, "Amount claimed", has the amounts Jones listed as deductible business

expenses for each category.  The third column, "Amount deductible", has the

amounts we find that Jones paid during 2007 for ordinary and necessary business

expenses that are deductible under section 162.  The fourth column, "Court's

description of amount; reasons not deductible", is (1) our description of the

amounts listed in the second column, and (2) the reasons that we determine that

the difference between the amount claimed and the amount deductible in each

category, for those categories for which there is a difference, is not deductible.

The factual conclusions in the third and fourth columns constitute findings of fact.

| [*12] | Business-expense deductions | | |
|---|---|---|---|
| Expense category | Amount claimed | Amount deductible | Court's description of amount; reasons not deductible |
| 1. Leads | $12,000.00 | $12,000.00 | This amount was paid to Lead to the Top in Cheyenne, Wyoming, for customer "leads", i.e., contact information for potential customers. |
| 2. Internet | 494.45 | -0- | This amount was paid to Bright House Network for internet service to Jones's house. Jones used the internet for both business and personal use; there is no basis in the record on which to estimate the portion of the charge that corresponds to business use. |
| 3. Phone | 898.92 | -0- | This amount was paid for cellular telephone service. The amount of business use of the cellular telephone to which this expense corresponds is not supported by adequate records or sufficient evidence corroborating Jones's own statement. Therefore, the strict substantiation requirements of sec. 274(d) for cellular telephone expenses have not been met. |

| | | | |
|---|---|---|---|
| **[*13]** 4. Mileage | 8,758.61 | -0- | According to Jones's testimony, this amount is the product of the standard mileage rate and the number of miles Jones drove his car for business. We need not determine whether this testimony is correct because the strict substantiation requirements of sec. 274(d) for passenger automobile expenses have not been met. The business mileage and the times and places of business use of the car are not supported by adequate records or sufficient evidence corroborating Jones's own statement. |
| 5. Entertainment | 1,118.60 | -0- | Jones did not testify what exactly these expenses were for except that they were for "entertainment". A review of Jones's credit-card statements might reveal evidence of the amount of each expense, the date of entertainment, and the place of entertainment. However, not all of the strict substantiation requirements of sec. 274(d) for entertainment expenses have been met for these alleged expenses. The business reason for the entertainment, the nature of the business discussion (or activity), and the business relationship between Jones and the person entertained are not supported by adequate records or sufficient evidence corroborating Jones's own statement (or by any evidence whatsoever). |

| | | | |
|---|---|---|---|
| **[*14]** 6. Travel | 1,631.56 | -0- | This amount was paid for travel away from Jones's home in the Orlando area. The business purposes of the trips are not supported by adequate records or sufficient evidence corroborating Jones's own statement. Therefore, the strict substantiation requirements of sec. 274(d) for travel expenses have not been met. |
| 7. PPL fees | 431.30 | 431.30 | This amount was paid to Pre-Paid Legal Services (hereinafter "PPL") for Jones's membership in that organization as a sales associate. |
| 8. Vonage phone | 388.75 | -0- | This amount was paid to Vonage America for telephone service. Jones used this service for both business and personal calls. There is no basis in the record on which to estimate the portion of the expense corresponding to business calls. |
| 9. 800 Phone Covista | 326.00 | -0- | This amount was paid to Covista Telephone in Chattanooga, Tennessee, for an 800 telephone number so that persons could call Jones long distance for free. Jones used this service for both business and personal calls. There is no basis in the record on which to estimate the portion of the expense corresponding to business calls. |
| 10. Office supplies | 212.13 | -0- | This amount was paid to an office supply store. Some of the items purchased were not used in Jones's business. There is no basis in the record on which to estimate the portion of the expense attributable to items used in Jones's business. |

| | | | |
|---|---|---|---|
| **[*15]** 11. PPL WEB | 239.40 | 239.40 | This amount was paid to PPL to use its website. |
| 12. UPS | 230.25 | -0- | This is the amount paid to UPS to ship Jones's packages. Some shipments were of business materials, such as PPL contracts, but we find that some shipments were personal. There is no basis in the record on which to estimate the ratio of business shipments to personal shipments. |
| 13. Newspaper | 160.55 | -0- | This amount was paid for Jones's subscription to the Orlando Sentinel newspaper. Jones testified that he reviewed the advertisements in the newspaper to find businesses to which he could sell PPL services. This testimony, although believable, is all we know about Jones's use of the newspaper. In the absence of other information, we do not conclude (1) that Jones used the newspaper exclusively for businesses purposes or (2) that there is a basis on which to estimate how much Jones used the newspaper for business purposes compared to personal purposes. |
| 14. Priceless Possibilities | 539.40 | 539.40 | This is the amount paid to Priceless Possibilities in Fallbrook, California, for marketing services. |
| 15. Printing | 459.22 | 459.22 | This amount was paid to print marketing materials. |
| 16. Long distance | -0- | -0- | We infer from the zero amount in Jones's spreadsheet that he does not claim a deduction related to this category of expenses. |

| | | | |
|---|---|---|---|
| **[*16]** 17. Donations | 1,200.00 | -0- | This amount was allegedly paid to charity. Jones has conceded that he is not seeking a business-expense deduction for the alleged payments to charity. There is no evidence of a business purpose for the alleged donations in any case. |
| 18. Stemtech | 377.46 | 377.46 | This amount was paid to Stemtech Health Sciences in San Clemente, California, to participate in its multilevel marketing arrangement for nutritional supplements. |
| 19. Video Plus | 870.00 | 870.00 | This amount was paid to Video Plus in Lake Dallas, Texas, for PPL marketing materials. |
| 20. Gluc Leads | -0- | -0- | We infer from the zero amount in Jones's spreadsheet that he does not claim a deduction related to this category of expenses. |
| 21. PPL marketing supplies | 1,502.00 | 1,502.00 | This amount was paid for marketing supplies related to PPL. |
| 22. Web site | 20.39 | 20.39 | This amount was paid to the company godaddy.com for business-related web services. |
| 23. Build Success marketing | 200.60 | 200.60 | This amount was paid to Build Lasting Success for marketing services. |
| 24. Tolls, parking | 404.00 | -0- | This amount was paid for tolls and parking in Florida. Jones has not satisfied his burden of proving that these expenses are the ordinary and necessary expenses of his business. |

| | | | |
|---|---|---|---|
| **[*17]** 25. Insurance license | 248.70 | 248.70 | This amount was paid for insurance licenses necessary for Jones to sell PPL services. |
| 26. Freedom Rocks | 1,289.00 | 1,289.00 | This amount was paid to Freedom Rocks to participate in its multilevel marketing arrangement. |
| 27. Stratus Marketing | 119.90 | 119.90 | This amount was paid to Stratus Marketing for marketing services. |
| 28. USPS | 81.88 | -0- | This amount was paid to the United States Postal Service for postage fees. Some of the services were not related to Jones's business. There is no basis in the record on which to estimate the portion of the fees that are attributable to Jones's business. |
| 29. Office supplies 2 | 352.26 | -0- | This amount was paid to an office supply store. Some of the purchases were items not used in Jones's business. There is no basis in the record on which to estimate the portion of the expense attributable to items used in Jones's business. |
| 30. Verizon | 737.54 | -0- | This amount was paid to Verizon for telephone service to Jones's house. He used this telephone service mainly to receive and send faxes. The telephone service is for the first (and only) telephone line in Jones's house. It is therefore classified as a personal expense under sec. 262(b). |

| | | | |
|---|---|---|---|
| **[*18]** 31. Miscellaneous | 281.38 | -0- | There is very little in the record about the expenses corresponding to this claimed amount. Jones has failed to prove that any of the amount was paid for business expenses. |
| 32. Other misc | -0- | -0- | We infer from the zero amount in Jones's spreadsheet that he does not claim a deduction related to this category of expenses. |
| 33. Utilities | 180.00 | -0- | This amount is 15% of the amount paid for electric, water, and garbage service to Jones's house. Although Jones testified that he used one bedroom of the house as an "office", he did not testify that the room was used exclusively for his business (as opposed to personal clerical or nonclerical matters). On the basis of the evidence we find that Jones did not use any portion of his house exclusively for his business. See sec. 280A(a), (c)(1). |
| 34. Taxes | 441.00 | -0- | This amount is 15% of the amount paid for property taxes on Jones's house. This amount is not deductible as a business expense because Jones did not use any portion of his house exclusively for his business. See sec. 280A(a), (c)(1). |
| 35. Books | 300.74 | 300.74 | This amount was paid for business-related books. |

| | | | |
|---|---|---|---|
| [*19] 36. PPL meetings | 635.00 | -0- | Although Jones testified that he spent this amount on PPL meetings in Tampa, Florida, and Altamonte Springs, Florida, and other cities, he did not explain what specific goods and services the amount was expended for (e.g., travel costs or attendance fees).  Furthermore, his payment of the amount is not generally corroborated by other evidence.  We conclude that Jones has not met his burden of proving (1) he paid the alleged expenses, (2) the amounts of the alleged expenses, and (3) that the alleged expenses were the ordinary and necessary expenses of his business. |
| 37. Lodging | 343.02 | -0- | This amount is alleged by Jones to be the expense of staying at hotels during out-of-town PPL conventions.  We need not decide whether this allegation is true.  The strict substantiation requirements of sec. 274(d) for travel expenses have not been met. The amount of each alleged hotel expense, the date of departure and date of return for the trip that corresponds to the hotel stay, the destination of the trip, and the business reason for the trip are not all supported by adequate records or sufficient evidence corresponding Jones's own statement. |
| 38. Stemtech | 434.77 | 434.77 | This amount was paid to Stemtech Health Sciences in San Clemente, California, to participate in its multilevel marketing arrangement for nutritional supplements. |
| 39. PPL tools | 40.44 | 40.44 | This amount was paid to PPL for PPL materials. |

| | | | |
|---|---|---|---|
| **[*20]** 40. Voice Shot | 400.00 | 400.00 | This amount was paid to Voiceshot LLC for a marketing service. |
| 41. Sprint phone | 37.28 | -0- | This is the amount paid to purchase a cellular telephone. The amount of business use of the cellular telephone is not supported by adequate records or sufficient evidence corroborating Jones's own statement. Therefore, the strict substantiation requirements of sec. 274(d) for cellular telephone expenses have not been met. |
| 42. Signup leads | 89.00 | 89.00 | This amount was paid to Signup Leads for customer leads. |
| 43. Movie Views Leads | 425.00 | 425.00 | This amount was paid to Movie Views Leads for customer leads. |
| 44. Quantum Leads | 99.00 | 99.00 | This amount was paid to Quantum Leads for customer leads. |
| 45. Burg/Lehr | 1,535.26 | 1,535.26 | This amount was paid to Burg Communication in Florida and to Lehr Witten Team in Phoenix, Arizona, for marketing services. |

| | | | |
|---|---|---|---|
| [*21] 46. Cab/bus | 115.70 | -0- | Jones testified that he paid this amount for cab and bus fare for travel to and from his hotels and the convention sites at out-of-state PPL conventions. We need not decide whether this testimony is true because the strict substantiation requirements of sec. 274(d) for travel expenses have not been met. The amount of each cab and bus expense, the date of departure and return for each trip to which the expense relates, the destination of the trip, and the business reason for the trip are not all supported by adequate records or sufficient evidence corroborating Jones's own statement. |
| 47. Finance charge | 151.34 | -0- | This amount was paid as a credit-card finance charge. We find that this expense is not related to Jones's business. |
| 48. SWREG | 158.77 | 158.77 | This amount was paid to SWREG, Inc., for business software. |
| 49. Rental car | -0- (amount corrected in hand-writing to $58.92) | -0- | Jones paid $58.92 to rent a car in Dallas, Texas. The business reason for traveling to Dallas is not supported by adequate records or sufficient evidence corroborating Jones's own statement. Therefore, the strict substantiation requirements of sec. 274(d) for travel expenses have not been met. |
| 50. GTI Travel | 149.00 | 149.00 | This amount was paid to GTI Travel to participate in its multilevel marketing arrangement. |

| | | | |
|---|---|---|---|
| [*22] 51. Awards | 128.00 | -0- | This amount was paid for gifts for other PPL sales associates. The date of each gift, a description of the gift, the business reason for the gift, and the business relationship with the person receiving the gift are not supported by adequate records or sufficient evidence corroborating Jones's own statement. Therefore the strict substantiation requirements of sec. 274(d) for gifts have not been met. |
| 52. Soho | 259.95 | 259.95 | This amount was paid to Soho Solutions in Texas for marketing services. |
| 53. Vayan leads | 500.00 | 500.00 | This amount was paid to Vayan Network in Boca Raton, Florida, for customer leads. |
| 54. Passport To Wealth | 1,388.79 | 1,388.79 | This amount was paid to Passport To Wealth to participate in its multilevel marketing arrangement. |
| 55. Software | 70.00 | -0- | This amount was paid for software. Jones, who has the burden of proof, did not testify about the purpose of this software. We find it was not business related. |
| 56. Education | 55.31 | -0- | This amount was paid for online education to learn about personal income tax returns. We find this expense is not related to Jones's business. |

| | | | |
|---|---|---|---|
| **[*23]** 57. Petty cash | 780.00 | -0- | This amount was withdrawn from Jones's bank account in cash and used for business meals. The expenses of business meals must satisfy the strict substantiation requirements for entertainment expenses. The amount of each expense, the date of the meal, the place of the meal, the business reason for the meal, the nature of the business discussion or activity, and the business relationship with the persons at the meal are not supported by adequate records or sufficient evidence corroborating Jones's own statement. Therefore, the strict substantiation requirements of sec. 274(d) for entertainment expenses have not been met. |
| 58. Johnson | 720.00 | -0- | This is the amount Jones paid for the use of a cellular telephone owned by his friend, Christopher Johnson. The amount of business use of the cellular telephone to which this expense corresponds is not supported by adequate records or sufficient evidence corroborating Jones's own statement. Therefore, the strict substantiation requirements of sec. 274(d) for cellular telephone expenses have not been met. |
| Total | [1]45,011.62 | 24,078.09 | |

[1]We note that there is a 10-cent difference between the total on Exhibit 13-P, $45,011.72, and computer-generated total in the table above. We assume that the total listed on Exhibit 13-P contained an error of 10 cents.

**[\*24]** 2.    Additions to tax

The burden of production with respect to the imposition of each addition to tax rests with the IRS.  See sec. 7491(c); Higbee v. Commissioner, 116 T.C. at 446-447.  With respect to the section 6651 additions to tax, the IRS's burden does not require it to establish the absence of reasonable cause.  See Higbee v. Commissioner, 116 T.C. at 447; Davis v. Commissioner, 81 T.C. 806, 820 (1983), aff'd without published opinion, 767 F.2d 931 (9th Cir. 1985).

a.    The addition to tax for failure to timely file a return under section 6651(a)(1)

Section 6651(a)(1) imposes an addition to tax for failure to timely file a required return,[6] unless the taxpayer can establish that the failure is due to reasonable cause and not due to willful neglect.

Jones admitted that he did not file an income tax return for tax year 2007. Therefore the IRS has met its burden of proof.

Jones's explanation for not filing a return is that the "Internal Revenue Code is so complex and confusing no one can understand it or comply with its multitudinous provisions."  Jones did not make reasonable efforts to determine his

---

[6]Substitutes for returns are disregarded for the purpose of determining the amount of this addition to tax.  Sec. 6651(g)(1).

[*25] tax liability under the Internal Revenue Code.  There is no evidence that he even calculated his tax liability, and we find that he did not.  We find that he did not have reasonable cause for failing to file his 2007 tax return.  He is liable for the addition to tax under section 6651(a)(1).

      b.      <u>The addition to tax for failure to timely pay tax under section 6651(a)(2)</u>

Section 6651(a)(2) imposes an addition to tax for failure to pay the tax shown on a return on or before the date prescribed for payment, unless such failure is due to reasonable cause and not willful neglect.  For each month the taxpayer fails to pay the tax shown on the return, the addition to tax is 0.5% of the portion of the tax shown that is unpaid at the beginning of each month, not to exceed 25% in the aggregate.  Sec. 6651(a)(2), (b)(2).[7]  When a taxpayer does not file a return, the IRS may prepare a substitute for return.  Sec. 6020(b).  Such a return is treated as the return filed by the taxpayer for purposes of the section 6651(a)(2) addition to tax.  Secs. 6020(b), 6651(g)(2).

Reasonable cause for the failure to timely pay tax exists if "the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence

---

[7]If the tax shown is greater than the tax required to be shown, the tax required to be shown (i.e., the lesser of the two amounts) is substituted for the tax shown in making this calculation.  Sec. 6651(c)(2).

[*26] in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship * * * if * * * [the taxpayer] paid on the due date." 26 C.F.R. sec. 301.6651-1(c)(1) (2012).

The IRS has met its burden of production for the section 6651(a)(2) addition to tax. We find that the IRS prepared a valid substitute for return for Jones's 2007 tax year and that he failed to timely make any tax payments. Jones has not shown that he had reasonable cause for failing to timely pay his 2007 tax. We hold that Jones is liable for the section 6651(a)(2) addition to tax.

    c.    <u>The addition to tax for failure to pay estimated income tax under section 6654(a)</u>

Section 6654(a) imposes an addition to tax for failure to make timely and sufficient payments of estimated tax. A taxpayer has an obligation to pay estimated tax for a particular year only if the taxpayer has a "required annual payment" for that year. Sec. 6654(b)(1), (c)(1), (d). A required annual payment is equal to the lesser of: (1) 90% of the tax shown on the taxpayer's return for the year in issue (or, if no return is filed, 90% of the tax for such year); or (2) 100% of the tax shown on the return for the immediately preceding taxable year (clause (2) does not apply if the taxpayer did not file a return for the immediately preceding

[*27] taxable year). Sec. 6654(d)(1)(B). Generally, section 6654 provides no exception for reasonable cause. 26 C.F.R. sec. 1.6654-1(a)(1) (2012). The IRS's burden of production under section 7491(c) requires it to produce, for each year for which the addition to tax is asserted, evidence that the taxpayer had a required annual payment under section 6654(d).

Jones made no estimated tax payments for 2007, had a tax liability for 2007, and failed to file a 2006 tax return. Therefore, Jones had a required annual payment for 2007 and is liable for the section 6654(a) addition to tax.

We have considered all other arguments the parties have made, and to the extent that we have not discussed them, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

An appropriate order will be issued regarding paragraphs 13 and 14 of respondent's proposed stipulation of facts, and decision will be entered under Rule 155.