T.C. Memo. 2017-124

UNITED STATES TAX COURT

RICHARD A. CANATELLA, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19375-13.                    Filed June 26, 2017.

<u>Richard A. Canatella</u>, for himself.

<u>L. Katrine Shelton</u>, <u>Brenn C. Bouwhuis</u>, and <u>Charles B. Burnett</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, <u>Judge</u>:  The respondent (referred to here as the "IRS") issued a notice of deficiency to the petitioner, Richard A. Canatella, for the taxable years 2008, 2009, and 2010.  The IRS determined tax deficiencies of $248,262 for 2008, $92,758 for 2009, and $128,167 for 2010, and accuracy-related penalties under

**[*2]** section 6662(a) of $49,652 for 2008, $18,552 for 2009, and $25,633 for 2010.[1] Canatella timely filed a petition under section 6213(a) for redetermination of the deficiencies.[2] We have jurisdiction under section 6214. In this opinion we hold:

1. The Court did not err in allowing the revenue agent to remain in the courtroom after Canatella's request to exclude fact witnesses from the courtroom at the beginning of trial. See infra part 1.

2. The counsel for the IRS did not engage in misconduct due to the mislabeling of exhibits. See infra part 2.

3. The IRS's bank-deposits analysis is not erroneous as a whole. However, $124,000 in deposits were improperly characterized as income to Canatella for 2008. See infra part 3.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

---

[1]Unless otherwise indicated, all section references are to sections of the Internal Revenue Code as in effect for the years at issue, 2008-2010, and all Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded to the nearest dollar.

[2]Canatella was a resident of California when he filed the petition. Therefore, an appeal of our decision in this case would go to the U.S. Court of Appeals for the Ninth Circuit, see sec. 7482(b)(1), unless the parties designate the Court of Appeals for another circuit, see id. para. (2).

[*3] I.     Background

In 2008-10, Canatella operated a law firm doing business as Cotter & Del Carlo. He was the only lawyer in the firm, which operated as a sole proprietorship. Before its winding up of business in 2010, the firm had been in existence over 40 years and specialized in probate matters.

As a result of litigation or settlements, Canatella often received funds payable to his clients and was obligated to hold the funds in trust until distributions were warranted. From 2008 to 2010, Canatella maintained 20 bank accounts at six financial institutions.

II.     Tax Reporting; Notice of Deficiency

Canatella filed late Forms 1040, "U.S. Individual Income Tax Return", for 2008, 2009, and 2010. Canatella filed both his 2008 and 2009 returns on June 10, 2011, and his 2010 return on November 4, 2011.

During each of the three years, Canatella filed under the status of married-filing-separately. An accountant prepared each of the returns. On his returns for 2008, 2009, and 2010, Canatella did not report any income other than the business income that he reported on his Schedules C, "Profit or Loss From Business". The Schedules C reported the following business income, expenses (broken down into various categories), and gain/loss from the operation of Cotter & Del Carlo:

| [*4] | 2008 | 2009 | 2010 |
|------|------|------|------|
| Gross receipts | $509,486 | $382,372 | $170,654 |
| Expenses | 436,096 | 311,130 | 210,851 |
| Net profit/loss | 73,390 | 71,242 | (40,197) |

Even though Canatella reported only business income on his tax returns, the IRS received information returns from payors showing that they paid Canatella interest and Social Security income. The IRS initiated an audit of the 2008, 2009, and 2010 returns on account of both his failure to timely file these returns and his failure to report on the late-filed returns his interest and Social Security income. The IRS, through its revenue agent, requested documents from Canatella regarding his business income, interest income, and Social Security income. In response, Canatella provided (1) a QuickBooks ledger and (2) canceled checks that had been deposited into his main business checking account, No. 9667. The documents neither referenced the other bank accounts receiving interest income nor accounted for discrepancies in interest and Social Security income.

The IRS issued summonses to all the banks where Canatella had accounts open during the three-year period. Using the summoned account information, a bank-deposits analysis reconstructed Canatella's income. In conducting the bank-deposits analysis, the IRS: (1) totaled all deposits into all Canatella's bank accounts, (2) subtracted out all deposits (or portions of deposits) determined to be

**[\*5]** nontaxable, including interaccount transfers and refunds, and deposits from nontaxable sources, (3) subtracted the amounts of income that Canatella had reported on his tax returns, and (4) determined that the resulting amount for each year was Canatella's unreported Schedule C gross receipts.  In its bank-deposits analysis the IRS did not determine that any deposits into account No. 9193 were taxable because it determined that account No. 9193 was an IOLTA account.  An IOLTA account is an account for client funds that are in small amounts or held for short periods.

The IRS provided Canatella with a copy of the bank-deposits analysis and gave him an opportunity to contest it.  Canatella did not furnish any additional documents to contest the bank-deposits analysis.

The IRS mailed a notice of deficiency to Canatella for 2008, 2009, and 2010 on May 31, 2013.  Reflecting the bank-deposits analysis, the notice determined Canatella under-reported his Schedule C income by $285,725 for 2008, ($36,391) for 2009,[3] and $232,827 for 2010.  The notice disallowed certain business-expense deductions Canatella claimed on his Schedules C.  These disallowed deductions totaled $336,478 for 2008, $250,320 for 2009, and $144,227 for 2010.  The notice

---

[3]For 2009 the IRS determined Canatella over-reported his Schedule C income by $36,391.

**[\*6]** determined that Canatella had failed to report interest and Social Security income. The notice determined tax deficiencies of $248,262 for 2008, $92,758 for 2009, and $128,167 for 2010 and section 6662(a) penalties of $49,652 for 2008, $18,552 for 2009, and $25,633 for 2010.

III.   Stipulation of Settled Issues; Concessions

After the issuance of the notice of deficiency, the parties executed a stipulation of settled issues. They agreed that Canatella was entitled to business-expense deductions of $105,384 for 2008, $76,016 for 2009, and $80,753 for 2010 for categories in which he had claimed deductions on his Schedules C. The parties also agreed that Canatella was entitled to business-expense deductions of $108,462 for 2008, $68,360 for 2009, and $24,936 for 2010 for categories in which he had not claimed deductions on his Schedules C.[4] The parties agreed on the amounts of unreported interest income and Social Security income for each

---

[4]In the categories of business-expenses for which Canatella had not claimed any deductions on his Schedules C, the stipulation of settled issues states that Canatella is entitled to deductions of "at least" $90,417 for 2008 and $54,112 for 2009 for "case costs and payments to clients". Thus, the stipulation of settled issues preserved Canatella's right to prove his entitlement to deductions for "case costs and payments to clients" above these dollar thresholds for both years. But in his brief, Canatella disputes only whether deposits are properly includable in his income, not whether he is entitled to deductions for the payment of the deposited funds to his clients. He has therefore waived any argument regarding these deductions. See Rule 151; Nicklaus v. Commissioner, 117 T.C. 117, 120 n.4 (2001).

**[*7]** year. (These amounts totaled $70,975 of interest income and $39,154 in Social Security income for all three years.). They agreed that Canatella is liable for the negligence penalty under section 6662(a) for 2008, 2009, and 2010.[5] The parties did not agree on the amounts of Canatella's Schedule C gross receipts.

In its brief the IRS conceded that account No. 3427 is an IOLTA account and that none of the deposits into the account that it determined to be taxable as part of its bank-deposits analysis are includable in Canatella's income. Remaining at issue is the validity of the bank-deposits analysis as a whole and, alternatively, the taxability of four deposits that Canatella specifically challenges.

OPINION

1. Designated Representative

At the beginning of trial, Canatella requested that all witnesses be excluded from the courtroom under Rule 145. The Court ordered all witnesses excluded from the courtroom, but made an exception for the revenue agent. The revenue agent was designated the IRS's representative by the trial attorneys from the IRS Office of Chief Counsel. Therefore the revenue agent was properly permitted to remain in the courtroom under the exception in Rule 145(a) for "an officer or

---

[5]On brief Canatella disputes his liability for the sec. 6662(a) penalties, but he is bound by the stipulation of settled issues. See Rule 91(e).

**[*8]** employee of a party which is not a natural person designated as its representative by its attorney." Canatella contends in his brief that the designated representative of the IRS was the trial attorney's supervising attorney (who also was in the courtroom) and that therefore the revenue agent could not also be the designated representative. However, the supervising attorney was not the IRS's designated representative under Rule 145(a).

2.      Alleged Misconduct by IRS Trial Attorney

On brief, Canatella claims the IRS's trial attorney violated Rules 1-102(a)(4) and 1-102(a)(5) of the 1969 American Bar Association Model Code of Professional Responsibility ("Model Code") by fraudulently stating that Canatella had been given the latest version of the stipulated exhibits before trial. Practitioners before this Court are not required to comply with the Model Code. However, they are required to comply with the American Bar Association Model Rules of Professional Conduct ("Model Rules"). Rule 201(a). Sections 1-102(a)(4) and 1-102(a)(5) of the Model Code correspond to Rule 8.4 of the Model Rules. We are unconvinced that the IRS's trial attorney engaged in any type of misconduct. During trial, the trial attorney represented only that: (1) mislabeled versions of the documents were exchanged before trial and (2) Canatella was not working from the correct version at trial. After she discovered the discrepancy the

[*9] trial attorney took the initiative to correct the problem so that Canatella could properly cross-examine the witness. Accordingly, we find no basis for Canatella's allegation of misconduct.

3.      Bank-Deposits Analysis

The notice of deficiency determined, on the basis of the IRS bank-deposits analysis, the amounts of Canatella's total gross receipts and his unreported gross receipts. On brief the IRS concedes that the deposits into account No. 3427 are not gross income to Canatella. The relevant amounts are summarized below:

| Item | 2008 | 2009 | 2010 |
|------|------|------|------|
| Total gross receipts according to notice of deficiency | $795,211 | $345,481 | $403,481 |
| Unreported gross receipts according to notice of deficiency | 285,725 | -36,391 | 232,827 |
| Unreported gross receipts after concession by IRS in brief regarding account No. 3427 | 260,725 | -36,391 | 141,448 |

Gross income generally includes "income from whatever source derived" unless specifically excluded by statute. Sec. 61(a). Taxpayers are required to maintain records sufficient to establish the amounts of income, deductions, and other items which underlie their federal income tax liabilities. Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs. If a taxpayer fails to keep adequate books and

**[\*10]** records, the IRS may reconstruct the taxpayer's income by any method that is reasonable under the circumstances. Petzoldt v. Commissioner, 92 T.C. 661, 687 (1989). The reconstruction need not be exact, so long as it is reasonable and substantially correct. Id. at 693; Meneguzzo v. Commissioner, 43 T.C. 824 (1965). The use of bank deposits is recognized as a reasonable method of reconstructing income. Parks v. Commissioner, 94 T.C. 654, 658 (1990); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Nicholas v. Commissioner, 70 T.C. 1057, 1065 (1978). "The bank deposits method assumes that all money deposited in a taxpayer's bank account during a given period constitutes taxable income, but the Government must take into account any nontaxable source or deductible expense of which it has knowledge." Clayton v. Commissioner, 102 T.C. 632, 645-646 (1994) (citing DiLeo v. Commissioner, 96 T.C. 858, 867 (1991)), aff'd, 959 F.2d 16 (2d Cir. 1992). The notice of deficiency issued to Canatella reflected the conclusions of the IRS bank-deposits analysis in its gross-receipts determinations. As a general rule, a taxpayer bears the burden of proving the IRS's determinations in a notice of deficiency to be in error. Rule 142(a).

Section 7491(a), which shifts the burden of proof to the IRS under certain circumstances, does not apply with respect to any factual dispute in this case because Canatella did not keep adequate books and records. See sec.

[*11] 7491(a)(2)(A) and (B).  He claims that he kept his law-practice books on a computer program called QuickBooks.  He gave the printouts from QuickBooks to the IRS during the examination.  However, the revenue agent credibly testified that the QuickBooks printouts covered only one of Canatella's business accounts (Canatella did not introduce the QuickBooks printouts at trial).

The U.S. Court of Appeals for the Ninth Circuit recognizes another exception to the general rule where the notice of deficiency determines that the taxpayer failed to report income.  Llorente v. Commissioner, 649 F.2d 152, 156 (2d Cir. 1981), aff'g in part and rev'g in part 74 T.C. 260 (1980); Weimerskirch v. Commissioner, 596 F.2d 358 (9th Cir. 1979), rev'g 67 T.C. 672 (1977).  In such circumstances, the IRS must come forward with evidence establishing a minimal foundation, which may consist of evidence linking the taxpayer with an income-producing activity.  Petzoldt v. Commissioner, 92 T.C. at 689.  Canatella does not dispute that he received income from his law practice.  However, he contends that the IRS's determinations of unreported gross receipts should not be sustained because the bank records used by the IRS "did not specify the taxable or nontaxable nature of the deposits".  It is a fundamental principle underlying the bank-deposits method that all deposits are presumptively taxable.  United States v. Stone, 770 F.2d 840, 844 (1985).  If Canatella is correct that the bank-deposits

**[\*12]** method can be used only when the bank records show whether the deposits are taxable (i.e. includable in gross income for tax purposes), then the bank-deposits method could never be used. The bank records relied on by the IRS need not specify the taxable or nontaxable nature of the deposits.

Next, Canatella contends that the IRS has incorrectly concluded that some bank deposits were income and that therefore all of the results of its bank-deposits analysis should be rejected. It is true that the IRS has incorrectly concluded that some bank deposits were income. This is illustrated by its concession on brief that it incorrectly determined that deposits into account No. 3427 were income. And, as we explain later in this opinion, we hold that one deposit (and portions of two other deposits) were incorrectly determined by the IRS to be income. However, courts recognize that some errors are unavoidable when an indirect method is used to reconstruct income, especially where the taxpayer has failed to maintain adequate records. United States v. Stonehill, 702 F.2d 1288, 1296 (9th Cir. 1983). In this case, the IRS made an effort to determine which deposits were attributable to nontaxable sources (and indeed, it determined that some deposits were attributable to nontaxable sources). Cf. Westby v. Commissioner, T.C. Memo. 2004-179 (bank-deposits analysis invalid where IRS did not make adjustments for

[*13] nontaxable items). We will not reject the IRS's bank-deposits analysis in its entirety merely because of these few incorrect determinations.

Next, Canatella contends that the bank-deposits method is unnecessary because he kept records of his income through QuickBooks. But as already explained, he apparently used QuickBooks to track only one of his business accounts. Further, he did not produce the QuickBooks records at trial. Therefore we are unable to conclude that the IRS was unreasonable in engaging in its own method of determining Canatella's income. We therefore reject Canatella's argument that the results of the bank-deposits analysis should be categorically dismissed.

Canatella is still entitled to prove that a particular deposit is not taxable. See Clayton v. Commissioner, 102 T.C. at 645-646. Canatella takes up this challenge with respect to four specific deposits made in 2008.

The first deposit was a $61,487 deposit into account No. 2293 on February 12, 2008. This deposit was a transfer from the account that the parties agree was an IOLTA account, IOLTA No. 9193. Three days before this interaccount transfer, Canatella had deposited into IOLTA No. 9193 a check in the exact amount of the transfer. The check was from Residential Mortgage Capital and was written to Deborah Dolch as conservator for Elizabeth Zut. On the same day

**[\*14]** as the $61,487 interaccount transfer from IOLTA No. 9193 to account No. 2293, Canatella wrote a $20,000 check to Elizabeth Zut drawing on account No. 2293. Canatella asserts the $61,487 deposit is not taxable to him because account No. 2293 is a client-trust account. He refers to account No. 2293 in his brief as the "Zut conservatorship distribution account".

As a general rule, funds that a taxpayer receives in trust for another person are not includable in the taxpayer's gross income. Ford Dealers Advert. Fund, Inc. v. Commissioner, 55 T.C. 761, 771 (1971), aff'd, 456 F.2d 255 (5th Cir. 1972). Under this general rule, if a lawyer receives funds that professional regulations require to be segregated from other funds and accounted for separately, the funds are not includable in the income of the lawyer. Miele v. Commissioner, 72 T.C. 284, 290 (1979). Under the California Rules of Professional Conduct, Canatella was required to hold all client funds in bank accounts that were labeled "Trust Account", "Client's Fund Account", or something similar. Cal. R. Prof. Conduct 4-100(A). He was prohibited from commingling client funds with his own funds. Id. at 4-100(A)(2). Canatella was also required to keep detailed records of client funds, including a ledger for each client showing all funds he received on behalf of the client and all disbursements he made on behalf of the client. Id. at 4-100(B)(3); Board of Governors of the State Bar of California, Trust Account

**[\*15]** <u>Record Keeping Standards</u> (1992), http://www.calbar.ca.gov/Attorneys/ Conduct-Discipline/Rules/Rules-of-Professional-Conduct/Current-Rules/Rule-4-1 00.  Account No. 2293 was not labeled a client trust account.  Canatella routinely used the account to deposit his legal fees, to pay his business expenses, and to pay his personal expenses.  He did not introduce as evidence any of the ledgers required for client trust accounts.  Nor did he show that he had such ledgers for account No. 2293.  Thus, Canatella did not follow the labeling, anticommingling, and record-keeping requirements for maintaining account No. 2293 as a client trust account.  Nonetheless, we conclude that Canatella treated $20,000 of the $61,467 deposit as the funds of his client Elizabeth Zut.  Canatella paid $20,000 to Zut immediately after the transfer of the $61,467 deposit.  Under the circumstances, $20,000 of the $61,467 was not "treated" by Canatella as "belonging to him."  <u>See</u> <u>Healy v. Commissioner</u>, 345 U.S. 278, 282 (1953).  It is not includable in his income.

The second deposit is a $40,960 interaccount transfer on April 4, 2008.  The transfer moved money from IOLTA No. 9193 to account No. 2293, the account that allegedly was the Zut conservatorship distribution account.  The day before this transfer, Canatella deposited a $150,000 check into IOLTA No. 9193.  The $150,000 check was written by the Allstate Insurance Co. to "Cotter & Del Carlo

**[*16]** Trust Account". Canatella claims that he transferred $40,960 from IOLTA No. 9193 to account No. 2293 in order to keep the $40,960 in trust for LaRell Franklin, one of several heirs entitled to the proceeds of the $150,000 check. However, at the same time he transferred $40,960 to account No. 2293, Canatella made a $28,970 distribution directly to Franklin (as well as distributions to four other heirs). Canatella argues on brief that he had the authority to hold the $40,960 in trust while Franklin was incarcerated. But there is no evidence that Franklin gave this authority to Canatella, that Franklin was incarcerated, or that Canatella distributed the $40,960 to Franklin after his release. Furthermore, Franklin received $28,970 immediately after Allstate paid the $150,000 settlement. As a result, we are not convinced that the $40,960 transfer from IOLTA No. 9193 to account No. 2293 was of funds held in trust for Franklin.

The third deposit is a $150,000 check from Fidelity National Title Insurance Co. to "Joan Roback and Cotter & Del Carlo, her attorneys". The check was deposited into account No. 1629 on May 29, 2008. Canatella argues that this account is a non-IOLTA client trust account. But the account was not labeled a client trust account. The account contained commingled funds. There is no evidence a client ledger was kept. Thus, Canatella did not follow the California Rules of Professional Conduct for client trust accounts as to account No. 1629.

[*17] But it is also significant that three days after he deposited the $150,000 check into account No. 1629, Canatella wrote an $80,000 check drawing on account No. 1629 to Joan Roback with the word "Settlement" on the memorandum line. Simultaneously with that $80,000 deposit he transferred $32,000 from account No. 1629 to his main operating account, No. 9667. Canatella argues that he left $38,000 of the $150,000 in account No. 1629 to pay "future litigation costs". He claims he is not taxable on the $150,000 to the extent of (1) the $80,000 transferred to Roback and (2) the $38,000 remaining in account No. 1629. His claim that $38,000 was used to pay "future litigation costs" is not supported by the record. Of the $150,000 deposit, only $80,000 was client funds of Roback and was not includable in Canatella's income.

The fourth disputed deposit is a $24,000 deposit of a check from Canatella's son. The deposit was made into account No. 2293, the account that Canatella claims is the Zut conservatorship distribution account, on April 23, 2008. Canatella testified that this $24,000 check was a repayment of money he had lent his son. See, e.g., Commissioner v. Tufts, 461 U.S. 300, 307 (1983). But there is no loan document in the record. Nor did Canatella report that he earned any interest on the loan for the last three years. Thus, we are reluctant to conclude that the $24,000 deposit was a loan repayment. However, we observe that the $24,000

**[*18]** deposit is also nontaxable if it is a gift.  Sec. 102(a).  There is no evidence that Canatella was performing legal services for his son.  We believe it is more likely than not that the $24,000 deposit was either a gift or a repayment of a loan.  Therefore we hold that it is nontaxable.

In conclusion, we hold that the amount of deposits determined by the IRS to be includable in Canatella's income for the tax year 2008 should be reduced by $80,000 + $20,000 + $24,000 = $124,000.

We have considered all of the arguments the parties have made, and to the extent that we have not discussed them, we find them to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.