T.C. Memo. 2020-7

UNITED STATES TAX COURT

WILFREDO E. RIVERA AND MARIA T. RIVERA, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22285-16.                        Filed January 13, 2020.

Joseph M. Bray and Tyson R. Smith, for petitioners.

Cameron W. Carr and Thomas R. Mackinson, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  Respondent determined deficiencies in petitioners'

Federal income tax and section 6662(a)[1] accuracy-related penalties as follows:

---

[1]  All section references are to the Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.  All monetary amounts have been

(continued...)

[*2]

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2013 | $49,303 | $9,860 |
| 2014 | 122,547 | 24,509 |

After concessions,[2] the issues for decision are whether: (1) petitioners' partnership received and failed to report gross receipts on Forms 1065, U.S. Return of Partnership Income (partnership returns), (2) the partnership is entitled to certain deductions claimed on the partnership returns, and (3) petitioners are liable for section 6662(a) accuracy-related penalties.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The first stipulation of facts, first supplemental stipulation of facts, second supplemental stipulation of facts, and accompanying exhibits are incorporated herein by this reference. Petitioners resided in California when they timely filed their petition.

----

[1](...continued)
rounded to the nearest dollar.

[2] Respondent concedes that petitioners' taxable income for 2014 does not include a pension distribution of $99,898 and that petitioners are not liable for a 10% additional tax on that distribution. Petitioners concede all noncomputational adjustments in the notice of deficiency except for those to gross receipts, "other deductions", and the imposition of sec. 6662(a) penalties. The parties also made partial concessions, which we address in the body of this opinion.

[*3] I.      Background

Petitioners were born and raised in the Philippines and immigrated to the United States in 1983. Petitioner husband was a laboratory assistant, and petitioner wife was a registered nurse during the years at issue. Petitioners do not have any training in taxation or accounting.

Jet Travel International (JTI) is a travel agency that petitioners began operating as a flowthrough partnership in 2007. Petitioners were each 50% owners of JTI[3] and reported losses therefrom on Schedules E, Supplemental Income and Loss, for the years at issue. Petitioners, on behalf of JTI, purchased travel tickets for resale using their American Express credit card. JTI's clients purchased the travel tickets by cash or check. In connection with the operation of JTI, petitioners incurred bank charges on JTI's behalf.

During the years at issue petitioners were also independent business owners (IBOs) in American Communication Network, Inc. (ACN), a multilevel marketing company that focuses on selling telecommunications services. In connection with

---

[3] Thus, for the years at issue, JTI had 10 or fewer partners, each of whom was an individual. As there is no indication that an election was made under sec. 6231(a)(1)(B)(ii), JTI was a small partnership under sec. 6231(a)(1)(B), and secs. 6221 to 6234 do not apply. Instead, respondent's adjustments to JTI's income and expenses are to be decided in this proceeding. See New Phoenix Sunrise Corp. v. Commissioner, 132 T.C. 161, 173 n.3 (2009) (citing Wadsworth v. Commissioner, T.C. Memo. 2007-46), aff'd, 408 F. App'x 908 (6th Cir. 2010).

**[*4]** their business of selling ACN services, petitioners attended several ACN conventions and incurred expenses for ACN-related fees, dues, and subscriptions.

Petitioners owned a 2007 Lexus ES 350 during the years at issue. They used the automobile to travel to various ACN IBO presentations in the San Francisco Bay area, Los Angeles, San Diego, Sacramento, and Nevada. At those locations petitioners hosted private business receptions to recruit individuals to join ACN.

During 2013 and 2014 JTI had a business economy checking account with Bank of America. Petitioners also maintained two joint accounts at Bank of America in their own names and one account at Chase in petitioner wife's name in 2013. In 2014 petitioners continued to maintain one of the two joint accounts at Bank of America and the Chase account. Petitioner wife deposited her wage income into the Chase account.

In 2013 petitioners cashed a check for $160, which was reflected as a "Counter Credit" in petitioners' records. Petitioner husband, on JTI's behalf, received this check from a client as reimbursement for the payment of a rebooking penalty.

**[\*5]** II.      <u>Tax Reporting, Examination, and Notice of Deficiency</u>

In 2010, at the recommendation of petitioner husband's coworker, petitioners hired Roosevelt L. Drummer to prepare their Federal tax returns. Mr. Drummer had a physical office location and held himself out as a former revenue agent (RA) for the Internal Revenue Service (IRS) and an expert in business and taxation.

Petitioners provided Mr. Drummer with copies of their Forms W-2, Wage and Tax Statement, and other documents. Mr. Drummer prepared petitioners' joint Federal income tax returns for the years at issue; he also prepared JTI's partnership returns on the basis of the information that petitioners gave him. For both years at issue JTI treated ACN as a component of its business, reporting the income and expenses of both JTI and ACN on its partnership returns.[4]

Mr. Drummer advised petitioners that they could permissibly deduct their daughter's college tuition if they paid it through their daughter's S corporation. Trusting what they understood to be Mr. Drummer's experience as a former IRS RA, petitioners followed his advice. The details of the arrangement are not entirely clear. What we do know is that Mr. Drummer helped organize the

---

[4] Neither party contends that the ACN's reported income and expenses should be moved to Schedules C, Profit or Loss From Business, on petitioners' income tax returns.

[*6] S corporation, to which JTI wrote checks. The proceeds of the checks were ultimately used to pay petitioners' daughter's tuition.[5] JTI deducted its payments to the S corporation as "outside services" on its 2013 and 2014 partnership returns.[6] Mr. Drummer assured petitioners that this deduction was proper, and petitioners believed him.

On the 2013 partnership return JTI reported gross receipts of $25,639 and claimed various deductions, including $119,815 for "other deductions".[7] On the 2014 partnership return JTI reported gross income of $15,961 and claimed "other deductions" of $120,501.[8] JTI, which purchased travel tickets for resale, did not report any cost of goods sold on either the 2013 or 2014 partnership return.

Petitioners' and JTI's returns were selected for examination and assigned to RA Eddie Wong. Petitioners provided RA Wong with their and JTI's Bank of

---

[5] The S corporation's tax returns for the years at issue are not in the record.

[6] The record does not establish that the S corporation provided JTI any services.

[7] For 2013 JTI's "other deductions" comprised, among other things, "outside services" of $40,862. Petitioners concede that this expenditure was a nondeductible college tuition payment.

[8] For 2014 JTI's "other deductions" comprised, among other things, "outside services" of $4,615. Petitioners concede that this expenditure was a nondeductible college tuition payment.

[*7] America account statements. After petitioners were unable to identify the sources of several deposits, RA Wong summoned and received records for the Bank of America accounts. He prepared a bank deposits analysis for each year at issue. He did not know that petitioner wife maintained an account at Chase; accordingly, he did not include the account in his bank deposits analyses.[9]

Using the summoned records, RA Wong (1) totaled all deposits into petitioners' and JTI's Bank of America accounts, (2) subtracted out deposits determined to be nontaxable, including interaccount transfers and refunds, and deposits from nontaxable sources, (3) subtracted the amounts of income that petitioners and JTI had reported on their tax returns, and (4) determined the resulting amounts to be JTI's unreported gross receipts, which in turn he determined to be items entering into the calculation of petitioners' taxable income.

RA Wong determined that JTI had unreported gross receipts of $284,521 and $383,002 for 2013 and 2014, respectively.[10] In a bank deposits analysis that

---

[9] RA Wong, who replaced another RA during the pendency of the audit, did not request petitioners' bank statements in writing. The record does not indicate, and respondent does not allege, that petitioners intentionally concealed the existence of the Chase account.

[10] RA Wong also determined that JTI had unreported "purchases" of $249,400 and $277,430 for 2013 and 2014, respectively. For each year at issue, RA Wong allowed JTI an additional deduction for the purchases.

**[*8]** petitioners prepared and provided to RA Wong during the audit, petitioners calculated the same amounts of unreported gross receipts as RA Wong.

Respondent issued petitioners a notice of deficiency for the years at issue reflecting RA Wong's determinations of unreported gross receipts. The deficiency notice also disallowed several expense deductions claimed on the 2013 and 2014 partnership returns and determined that petitioners were liable for section 6662(a) accuracy-related penalties for the years at issue.

As stated supra note 2, petitioners concede the disallowance of all partnership deductions except for those to "other deductions". Petitioners also dispute their liability for the accuracy-related penalties.

OPINION

I.      Unreported Income

As a general rule, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that

[*9] the determinations are incorrect.[11]  Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

In the Court of Appeals for the Ninth Circuit, to which an appeal of this case presumably would lie absent a stipulation to the contrary, <u>see</u> sec. 7482(b)(1)(A), (2), the presumption of correctness does not attach in cases involving unreported income unless the Commissioner first establishes an evidentiary foundation linking the taxpayer to the alleged income-producing activity, <u>see</u> <u>Weimerskirch v. Commissioner</u>, 596 F.2d 358, 361-362 (9th Cir. 1979), <u>rev'g</u> 67 T.C. 672 (1977).  The requisite evidentiary foundation is minimal and need not include direct evidence.  See <u>Rapp v. Commissioner</u>, 774 F.2d 932, 935 (9th Cir. 1985); <u>Banister v. Commissioner</u>, T.C. Memo. 2008-201, <u>aff'd</u>, 418 F. App'x 637 (9th Cir. 2011).

Once the Commissioner produces evidence linking the taxpayer to an income-producing activity, the burden shifts to the taxpayer "to rebut the

---

[11]  Sec. 7491(a) provides that if, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtit. A or B and meets other prerequisites, the Commissioner shall have the burden of proof with respect to that issue.  See <u>Higbee v. Commissioner</u>, 116 T.C. 438, 440-441 (2001).  However, petitioners have neither claimed nor shown that they satisfied the requirements of sec. 7491(a) to shift the burden of proof to respondent.  Accordingly, petitioners bear the burden of proof.  See Rule 142(a).

**[\*10]** presumption of correctness of * * * [the Commissioner's] deficiency determination by establishing by a preponderance of the evidence that the deficiency determination is arbitrary or erroneous." Petzoldt v. Commissioner, 92 T.C. 661, 689 (1989); see also Hardy v. Commissioner, 181 F.3d 1002, 1004 (9th Cir. 1999), aff'g, T.C. Memo. 1997-97.

Every individual liable for tax is required to maintain books and records sufficient to establish the amount of his or her taxable income. Sec. 6001; DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992). As petitioners could not identify the sources of most deposits shown on their bank statements, they failed to produce adequate records for respondent to calculate their taxable income flowing from JTI.

Where a taxpayer fails to maintain or produce adequate books and records, the Commissioner is authorized to compute the taxpayer's taxable income by any method that clearly, in the Commissioner's opinion, reflects income. Sec. 446(b); Holland v. United States, 348 U.S. 121 (1954); Webb v. Commissioner, 394 F.2d 366, 371-372 (5th Cir. 1968), aff'g T.C. Memo. 1966-81. The reconstruction of income need only be reasonable in the light of all surrounding facts and circumstances. See Giddio v. Commissioner, 54 T.C. 1530, 1533 (1970). The Commissioner is given latitude in determining which method of reconstruction to

[*11] apply when a taxpayer fails to maintain records. Petzoldt v. Commissioner, 92 T.C. at 693.

Respondent employed the bank deposits method of proof to reconstruct petitioners' taxable income flowing from JTI. The acceptability of this method of proof is well established. DiLeo v. Commissioner, 96 T.C. at 867; Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), aff'd, 566 F.2d 2 (6th Cir. 1977). Bank deposits are prima facie evidence of income. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Estate of Mason v. Commissioner, 64 T.C. at 656-657. When using the bank deposits method, the Commissioner is not required to show that each deposit or part thereof constitutes income, Gemma v. Commissioner, 46 T.C. 821, 833 (1966), or prove a likely source, Clayton v. Commissioner, 102 T.C. 632, 645 (1994); Estate of Mason v. Commissioner, 64 T.C. at 657. Unless the nontaxable nature of deposits is established, gross income includes deposits to bank accounts where the taxpayer has dominion and control of the funds. See Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955); Davis v. United States, 226 F.2d 331, 334-335 (6th Cir. 1955); Manzoli v. Commissioner, T.C. Memo. 1988-299, aff'd, 904 F.2d 101 (1st Cir. 1990).

Respondent performed a bank deposits analysis for each year at issue and determined that JTI's gross receipts for 2013 and 2014 should be adjusted by

[*12] $284,521 and $383,002, respectively.  By reconstructing JTI's gross receipts using the bank deposits method and demonstrating that petitioners used the bank accounts for the business, respondent established the requisite minimal foundation linking petitioners with an income-producing activity.  Accordingly, petitioners bear the burden of proving that respondent's deficiency determinations are arbitrary or erroneous.

Petitioners, who agreed with RA Wong's bank deposits analyses during the audit, now argue that the analyses contain several mistakes.  They have met their burden with respect to only a handful of transactions.

For 2013 respondent determined a $160 check to be taxable income.  However, petitioner husband credibly testified that he received the funds on behalf of JTI as reimbursement for the payment of a rebooking penalty.  Generally, gross income does not include such reimbursements for expenses a taxpayer pays on behalf of another.  Gray v. Commissioner, 10 T.C. 590, 596-597 (1948); Fishman v. Commissioner, T.C. Memo. 2011-102, slip op. at 18.  We therefore find that the $160 check payment is not includable in JTI's gross receipts.[12]

---

[12] We note that respondent allowed JTI an additional deduction for unreported "purchases" for 2013.  Respondent does not contend that this deduction includes the $160 payment.

**[\*13]** With respect to 2014, respondent concedes on brief that the following deposits are not includable in JTI's gross receipts: (1) a Federal income tax refund of $25,870 for the 2013 tax year and (2) transfers of petitioner wife's salary deposits from the Chase account totaling $46,000.

Other than those transactions, however, petitioners have not provided any evidence that the remaining deposits respondent identified as income are nontaxable. Therefore, we conclude that the remaining deposits for 2013 and 2014 are taxable income.

Petitioners argue that respondent's determination of unreported gross receipts should be set aside because RA Wong failed to subtract the above-described nontaxable deposits from his bank deposits analyses. We disagree.

It is true that respondent incorrectly concluded that some bank deposits, such as the $160 check and the $25,870 Federal income tax refund, were income. However, courts recognize that some errors are unavoidable when an indirect method is used to reconstruct income, especially where (as here) the taxpayer failed to maintain adequate records. See United States v. Stonehill, 702 F.2d 1288, 1295-1296 (9th Cir. 1983); see also Canatella v. Commissioner, T.C. Memo. 2017-124, at \*12-\*13.

[*14] Given petitioners' failure to maintain adequate records and their inability to identify the sources of most deposits, respondent's reconstruction of income was reasonable in the light of the surrounding facts and circumstances. See Giddio v. Commissioner, 54 T.C. at 1533. The record establishes that RA Wong made an effort to determine which deposits were attributable to nontaxable sources (and indeed, he determined that some deposits were attributable to nontaxable sources).

Accordingly, we conclude that JTI had unreported gross receipts of $284,361 and $311,132 for 2013 and 2014, respectively.

## II.    Substantiation of Partnership Deductions

We next address whether JTI is entitled to the "other deductions" it claimed for the years at issue. Deductions are a matter of legislative grace, and taxpayers generally bear the burden of proving that they are entitled to any deductions claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Section 162(a) generally allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Such expenses must be directly connected with or pertain to the taxpayer's trade or business. Sec. 1.162-1(a), Income Tax Regs. Generally, no deduction is allowed for personal, living, or family expenses, nor is deduction

[*15] proper for expenditures that are properly categorized as capital expenditures. See secs. 262 and 263. The determination of whether an expenditure satisfies the requirements of section 162 is a question of fact. Commissioner v. Heininger, 320 U.S. 467, 475 (1943).

A taxpayer must maintain records sufficient to enable the Commissioner to determine his correct tax liability. Sec. 6001; Higbee v. Commissioner, 116 T.C. 438, 440 (2001); sec. 1.6001-1(a), Income Tax Regs. A taxpayer must "keep such permanent books of account or records * * * as are sufficient to establish the amount of gross income, deductions, credits, or other matters required to be shown by such person in any return of such tax or information." Sec. 1.6001-1(a), Income Tax Regs.

If the taxpayer is able to establish that he paid or incurred a deductible expense but is unable to substantiate the precise amount, the Court generally may approximate the deductible amount, but only if the taxpayer presents sufficient evidence to establish a rational basis for making the estimate (Cohan rule). See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); see also Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). However, section 274(d) overrides the Cohan rule with regard to certain expenses, including travel and certain listed property, which if otherwise allowable are subject to strict substantiation rules.

**[\*16]** <u>See</u> <u>Sanford v. Commissioner</u>, 50 T.C. 823, 827 (1968), <u>aff'd per curiam</u>, 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

Petitioners concede respondent's adjustments to JTI's deductions except for those to other deductions, which respondent disallowed in full for lack of substantiation.[13]  JTI's other deductions comprise the following reported expenses:

---

[13]  At trial respondent argued in the alternative that the ACN-related expenses on the partnership returns should be disallowed under sec. 183.  This argument was not set forth in either the notice of deficiency or the answer. Respondent did not move to amend his pleadings or develop this argument on brief.  We deem the issue to not be before us.  <u>See</u> <u>Thiessen v. Commissioner</u>, 146 T.C. 100, 106 (2016) ("[I]ssues and arguments not advanced on brief are considered to be abandoned.").

| [*17] Expense | 2013 | 2014 |
|---|---|---|
| Accounting | $2,603 | $2,403 |
| ACN convention | --- | 214 |
| ACN fees | --- | 15,811 |
| Auto and truck | 10,592 | 10,314 |
| Bank charges | 2,304 | 1,404 |
| Dues and subscriptions | 474 | 121 |
| Gifts | 601 | 300 |
| Global Empire | --- | 376 |
| Legal and professional | --- | 250 |
| "MEALS @ 100%" | 17,671 | --- |
| Meals and entertainment | 7,524 | 6,727 |
| Office expense | 25,306 | 46,685 |
| Outside services[1] | 40,862 | 4,615 |
| Parking and tolls | 73 | --- |
| Postage | 306 | 151 |
| Printing | --- | 17 |
| Telephone | 4,858 | 8,119 |
| Travel | 6,641 | 9,854 |
| Sales presentations | --- | 11,198 |
| Supplies | --- | 1,942 |
| Total | 119,815 | 120,501 |

[*18] [1] As explained supra notes 7 and 8, petitioners have conceded that JTI is not entitled to deductions for outside services.

Our resolution of the substantiation issue turns on the applicable law and our determination of the credibility of the evidence presented.

A.      Expenses Not Subject to Section 274

1.      Accounting Expenses

JTI claimed deductions of $2,603 and $2,403, respectively, for accounting expenses on its 2013 and 2014 partnership returns. Respondent argues that petitioners neither substantiated the amounts claimed nor differentiated accounting fees paid for the partnership returns and those paid for petitioners' joint Federal income tax returns. Accounting fees may be ordinary and necessary business expenses which generally are deductible under section 162(a). Aref v. Commissioner, T.C. Memo. 2009-118, slip op. at 10.

Credit card statements stipulated by the parties reflect multiple payments designated for tax, legal, and financial services during the years at issue: three payments to "CNG Administrative" in 2013 totaling $7,162 and two more payments to "CNG Administrative" in 2014 totaling $5,179. However, petitioners did not assert at trial or on brief that these payments related to the accounting expense deductions claimed on the JTI partnership returns. Furthermore, the

[*19] record does not indicate what actual services petitioners or JTI received for these payments. Accordingly, petitioners have not carried their burden of proof with respect to accounting expenses, and we sustain respondent's disallowance of the deductions.

### 2. ACN Fees and ACN Convention

JTI deducted "ACN INC FEES" of $15,811 and "ACN CONVENTION" expenses of $214 on its 2014 partnership return. Respondent argues that petitioners failed to substantiate these deductions.

This court has previously found that fees paid to participate in multilevel marketing arrangements may qualify as ordinary and necessary business expenses under section 162(a). See Jones v. Commissioner, T.C. Memo. 2013-132, at *12, *16-*17. Petitioner husband credibly testified that they were required to pay fees to ACN regularly in order to participate in ACN's multilevel marketing arrangement. The credit card statements stipulated by the parties reflect frequent recurring charges to ACN that total $15,620 during 2014, and we are persuaded that those charges reflect the reported "ACN INC FEES". We therefore find that petitioners, on JTI's behalf, paid ACN fees of $15,620 in 2014.

The credit card statements also reveal that the $214 deduction for "ACN Convention" expenses is comprised of two separate payments of $150 and $64 on

[*20] June 20, 2014, and December 5, 2014, respectively. Petitioners'

handwritten annotation indicates that the expenses were incurred for "ACN

Magazine" and "ACN Folders", respectively, and the credit card statements

indicate the payments were made to ACN Convention Supply.[14] Given petitioner

husband's credible testimony that petitioners attended ACN conventions in

connection with their business of selling ACN services, we find that these

expenses were ordinary and necessary business expenses.

Accordingly, JTI is entitled to deductions of $15,620 and $214 for ACN

fees and ACN convention expenses, respectively, for 2014.

### 3. Bank Charges

For 2013 and 2014, respectively, JTI claimed deductions of $2,304 and

$1,404 on its partnership returns for bank charges. Responded argues that

petitioners failed to substantiate these deductions.

Petitioner husband credibly testified that the use of his American Express

card to purchase airline tickets for JTI's clients resulted in bank charges in the

amounts claimed. On the basis of petitioner husband's credible testimony, we find

---

[14] Respondent did not object to the introduction of petitioners' handwritten notes as evidence.

[*21] that JTI is entitled to deductions of $2,304 and $1,404 for bank charges for 2013 and 2014, respectively.

### 4. Dues and Subscriptions

For 2013 and 2014, respectively, JTI claimed deductions of $474 and $121 for dues and subscriptions, which respondent disallowed in full. Petitioners testified that these expenses represented monthly payments to ACN for use of a "business assistant", as well as a monthly subscription to ACN's "Success Magazine." However, there is insufficient evidence in the record to establish that JTI actually paid for these products in 2013 and 2014. Accordingly, we sustain respondents' disallowance of JTI's deductions for dues and subscriptions for the years at issue.

### 5. Global Empire

On its 2014 partnership return JTI claimed a deduction of $376 for "Global Empire". Although petitioners' credit card statements confirm that they paid $376 to Global Empire, Inc., in 2014, they did not explain the business purpose of the expense. We therefore sustain respondent's disallowance of this deduction.

### 6. Legal and Professional

On its 2014 partnership return JTI claimed a deduction of $250 for legal and professional expenses. While petitioners' credit card statements reflect multiple

[*22] payments for possible tax, legal, and financial services during 2014, petitioners offered no testimony or other evidence linking the services to their business activities with JTI. We therefore sustain respondent's disallowance of this deduction.

### 7. Office Expenses and Supplies

For 2013 and 2014, respectively, JTI deducted office expenses of $25,306 and $46,685. In 2014 JTI also deducted $1,942 in expenses as "[s]upplies". Respondent argues that petitioners failed to substantiate these reported expenses.

The cost of materials and supplies consumed and used in operations during a taxable year is generally considered an ordinary and necessary expense of conducting a business. See sec. 162(a); Bruns v. Commissioner, T.C. Memo. 2009-168, slip op. at 25; sec. 1.162-3, Income Tax Regs. Petitioner husband credibly testified at trial that the claimed office expenses represented purchases for printers and ink. However, petitioners' credit card statements reflect total payments of only $365 during 2013 at office supply retailers such as Office Depot, the UPS Store, and Staples. The record does not indicate that JTI incurred rental or other office-related expenses.

[*23] Accordingly, JTI is entitled to a deduction of $365 for office expenses for 2013. We sustain respondent's disallowance of the remaining $24,941 for 2013. We also sustain respondent's disallowance in full with respect to 2014.

### 8. Parking and Tolls

JTI claimed a deduction of $73 for parking and tolls on its 2013 return. Petitioners provided no testimony or other evidence to establish that the amounts claimed were actually paid in 2013 or that these expenses were ordinary and necessary business expenses. We therefore sustain respondent's disallowance of this deduction.

### 9. Postage and Printing

For 2013 and 2014, respectively, JTI claimed deductions of $306 and $151 for postage; it also claimed a deduction of $17 for printing on its 2014 return. Petitioners did not offer testimony or other evidence that the amounts claimed were paid during the years at issue or that the reported expenses were ordinary and necessary business expenses. Accordingly, we sustain respondent's disallowance of these deductions.

### 10. Sales Presentations

JTI claimed a deduction of $11,198 for sales presentations on its 2014 return. Although petitioners testified that they traveled frequently to places like

**[*24]** Los Angeles and San Diego for sales presentations related to their ACN business, they did not provide evidence that the reported expenses were actually paid in 2014. Accordingly, we sustain respondent's disallowance of the deduction.

          11.    <u>Telephone</u>

For 2013 and 2014, respectively, JTI deducted telephone expenses of $4,858 and $8,119 on its partnership returns. Respondent argues that these deductions were properly disallowed for lack of substantiation. Telephone expenses may be deductible under section 162(a) if the expenses incurred are ordinary and necessary in carrying on a trade or business. <u>Aref v. Commissioner</u>, slip op. at 11.

At trial petitioner husband testified that the reported telephone expenses for 2013, totaling $4,858, were attributable to ACN and JTI. However, petitioners' credit card statements reflect total telephone expenditures of only $2,476. Because it is impossible to determine from the record which expenses related to petitioners' business and which to their personal use, we are unable to allow any deduction for 2013 for telephone expenses. <u>See</u> <u>Vanicek v. Commissioner</u>, 85 T.C. at 742-743.

[*25] With respect to tax year 2014, the credit card statements indicate that petitioners paid five different telephone carriers that year. Two of those carriers relate to petitioners' JTI and ACN businesses. The record reflects that petitioners paid $1,330 to ACN for digital phone services and $668 to Digitrain, Inc., which petitioners indicated in a handwritten note was for a "phone purchased to qualify IBO". Petitioner husband credibly testified that petitioners were actively soliciting sales with respect to their ACN venture.

Accordingly, we find that petitioners (on behalf of JTI) paid $1,998 for telephone services in 2014. JTI may deduct this amount for 2014.

B.      Expenses Subject to Section 274

Section 274(d) provides that no deduction is allowed with respect to travel, entertainment, or listed property (as defined in section 280F(d)(4)) unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement (1) the amount of expense or item, (2) the time and place of the travel, entertainment, or expense, (3) the business purpose of the entertainment or expense, and (4) the business relationship to the taxpayer of the person or persons entertained.

To substantiate by adequate records, the taxpayer must provide (1) an account book, log, or similar record prepared at or near the time of the expenditure

[*26] and (2) documentary evidence, which together are sufficient to establish each element of an expenditure.  Sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).  Documentary evidence includes receipts, paid bills, or similar evidence.  Sec. 1.274-5(c)(2)(iii), Income Tax Regs.  To substantiate by sufficient evidence corroborating the taxpayer's own statement, the taxpayer must establish each element by his or her own statement and by documentary evidence or other direct evidence.  Sec. 1.274-5T(c)(3)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46020 (Nov. 6, 1985).  To establish the business purpose of an expenditure, however, a taxpayer may corroborate his or her own statement with circumstantial evidence.  Id.

### 1.  Auto and Truck

For 2013 and 2014, respectively, JTI claimed deductions of $10,592 and $10,314 for auto and truck expenses.  Respondent disallowed deductions for these expenses for lack of substantiation.

A taxpayer may deduct the cost of operating an automobile under section 162 to the extent that it is used in a trade or business.[15]  Bruns v. Commissioner,

---

[15]  A taxpayer may deduct vehicle expenses by using either actual cost or the standard mileage rate, provided he substantiates the amount of business mileage and the time and purpose of each use.  See sec. 1.274-5(j)(2), Income Tax Regs.; Rev. Proc. 2010-51, 2010-51 I.R.B. 883.

[*27] slip op. at 23.  However, under section 262 no portion of the cost of operating an automobile that is attributable to personal use is deductible.  A passenger vehicle is listed property under section 280F(d)(4) and is therefore subject to the requirements of section 274(d).

Petitioner husband testified that petitioners used their 2007 Lexus ES 350 to travel to various ACN IBO presentations in the San Francisco Bay area, Los Angeles, San Diego, Sacramento, and Nevada.  However, petitioners produced no mileage logs, receipts, or other documentation for these expenses as required by section 274(d).  In the absence of adequate records or other sufficient corroborating evidence to establish each element of JTI's claimed auto expense deductions, we sustain respondent's determination on this issue.

### 2.  Gifts

For 2013 and 2014, respectively, JTI claimed deductions of $601 and $300 for gifts.  The cost of gifts may be an ordinary and necessary business expense if the gifts are connected with the taxpayer's opportunity to generate business income.  Bruns v. Commissioner, slip op. at 19.  Deductions for gifts are subject to the requirements of section 274(d).

At trial petitioner husband testified that the gifts in question were birthday presents.  However, petitioners produced no evidence as to the business purpose of

[*28] the gifts as required by section 274(d). We therefore sustain respondent's determination on this issue.

### 3. Meals and Entertainment

On its 2013 return JTI claimed deductions of $17,671 and $7,524, respectively, for "MEALS @ 100%" and meals and entertainment. For 2014 JTI deducted $6,727 for meals and entertainment. Respondent argues that petitioners have not substantiated these deductions.

Petitioner husband testified that the reported meal expenditures were for groceries, restaurants, and meetings at home conducted as part of the ACN business. However, the credit card statements and accompanying information in the record do not detail the time, place, and business relationship for each expenditure. Additionally, the receipts do not indicate that the meals were conducted for a business purpose.

Because the record lacks adequate records or other sufficient evidence to establish each element of their claimed meal and entertainment expense deductions, we sustain respondent's determination on this issue.

**[\*29]**      4.      <u>Travel</u>

For 2013 and 2014, respectively, JTI claimed deductions of $6,641 and $9,854 for travel.  Respondent argues that petitioners have not substantiated these reported expenses.

Petitioner husband testified that they traveled four times a year to ACN conventions.  Additionally, the record includes cover pages, American Express statements, and other hotel and airline receipts pertaining to petitioners' 2014 travel expenses.  However, the record does not contain any documentary evidence or other direct or circumstantial evidence of the business purpose of each reported travel expense.

Because petitioners did not establish by adequate records or other sufficient evidence the business purpose of their reported travel expenses, they have not met the requirements of section 274(d).  We sustain respondent's determination on this issue.

III.   <u>Accuracy-Related Penalties</u>

Finally, we determine whether petitioners are liable for accuracy-related penalties.  Pursuant to section 6662(a) and (b)(1) and (2), a taxpayer may be liable for a penalty of 20% on the portion of an underpayment of tax due to: (1) negligence or disregard of rules or regulations or (2) a substantial

[*30] understatement of income tax. "Negligence" is defined as any failure to make a reasonable attempt to comply with the provisions of the Code; this includes a failure to keep adequate books and records or to substantiate items properly. Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Negligence has also been defined as the failure to exercise due care or the failure to do what a reasonable person would do under the circumstances. See Allen v. Commissioner, 92 T.C. 1, 12 (1989), aff'd, 925 F.2d 348 (9th Cir. 1991); Neely v. Commissioner, 85 T.C. 934, 947 (1985). "Disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c).

"Understatement" means the excess of the amount of the tax required to be shown on the return over the amount of the tax imposed which is shown on the return, reduced by any rebate. Sec. 6662(d)(2)(A). A "substantial understatement" of income tax is defined as an understatement of tax that exceeds the greater of 10% of the tax required to be shown on the tax return or $5,000. Sec. 6662(d)(1)(A).

The accuracy-related penalty does not apply with respect to any portion of the underpayment for which the taxpayer shows that there was reasonable cause and that he acted in good faith. See sec. 6664(c)(1). The decision as to whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case

[*31] basis, taking into account all of the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. "Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of all of the facts and circumstances, including the experience, knowledge, and education of the taxpayer." Id. Reliance on a tax professional demonstrates reasonable cause when a taxpayer (1) selects a competent tax adviser, (2) supplies the adviser with all relevant information, and (3) relies in good faith on the adviser's professional judgment. See Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

The Commissioner bears the burden of production with respect to the taxpayer's liability for the section 6662(a) penalty and must produce sufficient evidence indicating that it is appropriate to impose the penalty.[16] See sec. 7491(c); Higbee v. Commissioner, 116 T.C. at 446-447. Once the Commissioner meets his burden of production, the taxpayer must come forward with persuasive evidence that the Commissioner's determination is incorrect or that the taxpayer had

---

[16] Sec. 6751(b)(1) requires written supervisory approval of the initial determination of certain penalties. The Commissioner's burden of production under sec. 7491(c) includes establishing compliance with sec. 6751(b)(1). See Graev v. Commissioner, 149 T.C. 485, 493 (2017), supplementing and overruling in part 147 T.C. 460 (2016); see also Clay v. Commissioner, 152 T.C. 223, 249 (2019). The parties have stipulated that respondent complied with the requirements of sec. 6751(b)(1) in this case.

[*32] reasonable cause or substantial authority for the position. See Higbee v. Commissioner, 116 T.C. at 446-447.

Respondent satisfied his burden of production with respect to negligence or disregard of rules or regulations. See secs. 6662(a) and (b)(1), 7491(c). Petitioners underreported JTI's gross receipts and did not maintain sufficient records to substantiate many of the expenses underlying JTI's deductions. The disallowed deductions in this case are directly attributable to petitioners' failure to maintain adequate records.[17]

Petitioners, who bear the burden of persuasion, argue that their reliance on Mr. Drummer constitutes reasonable cause and good faith. We agree in part and disagree in part. Petitioner husband credibly testified that he believed Mr. Drummer was a former IRS RA on the basis of a coworker's recommendation, and we find it more likely than not that petitioners reasonably believed Mr. Drummer was a competent tax adviser. See Lopez v. Commissioner, T.C. Memo. 2017-171, at *11-*12 (citing Neonatology Assocs. P.A. v. Commissioner, 115 T.C. at 99).

The fact that petitioners hired Mr. Drummer to prepare their returns does not, by itself, establish that they acted with reasonable cause and good faith. See

---

[17] To the extent the Rule 155 computations establish that petitioners have substantial understatements of income tax, respondent has also met his burden of production in this regard. See secs. 6662(a) and (b)(2), 7491(c).

[*33] <u>Neonatology Assocs., P.A. v. Commissioner</u>, 115 T.C. at 99-100. They must also establish that they supplied him with all relevant information and relied in good faith on his professional judgment. <u>See</u> <u>id.</u> Petitioners have met this burden only with respect to JTI's deductions for "outside services".

At trial petitioner husband credibly testified that Mr. Drummer advised him that petitioners could deduct their daughters' tuition if they paid it through an S corporation. Following Mr. Drummer's advice, petitioners reported these payments as deductible "outside services" on JTI's 2013 and 2014 returns. While this tax position might be "too good to be true" in other circumstances, we believe petitioners acted in good faith here. We observed at trial that petitioners face a significant language barrier. They have no formal training in accounting or taxation and believed that Mr. Drummer was a tax expert and former IRS RA. Accordingly, Mr. Drummer's advice carried significant weight for them. We therefore find that petitioners acted with reasonable cause and in good faith with respect to JTI's deductions for "outside services" for 2013 and 2014.

Regarding all other adjustments to petitioners' returns, petitioners have not shown that they acted with reasonable cause and good faith. The record does not establish that petitioners gave Mr. Drummer all relevant information with respect to their business income and expenses. We therefore sustain those portions of the

**[\*34]** accuracy-related penalties that do not pertain to JTI's "outside services" deductions.

The Court has considered all of the parties' arguments and, to the extent not discussed above, concludes that those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.